United States District Court

Eastern District of New York

_____

|                                           | : |           |
|                                           | : |           |
| AZIZA MCKNIGHT ALVERANGA                  | : |           |
|     Plaintiff,                            | : |           |
|     v.                                    | : |           |
|                                           | : | COMPLAINT |
|                                           | : |           |
| JETBLUE AIRWAYS CORPORATION               | : |           |
|     Defendant,                            | : |           |
| _____    | : |           |

1. This is an action by the Plaintiff, Aziza McKnight Alveranga ("Ms. McKnight") under the Family Medical and Leave Act ("FMLA"), against Defendant, JetBlue Airways Corporation ("JetBlue"), for suspending her employment and then firing her from her job as a Ground Operations Crew Member because she had applied for and been granted intermittent FMLA leave, in violation of 29 U.S.C. 2615(a).

2. Plaintiff also bring this action against Defendant under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code, 8-107 et seq., for suspending her employment and then firing her because of her disability, in violation of N.Y.C. Admin. Code 8-107 (1)(a); and for failing to reasonably accommodate her disability, in violation of N.Y.C. Admin. Code 8-107(15)(a).

## **JURISDICTION**

3. This Court has jurisdiction over plaintiff's FMLA claim under 29 U.S.C. § 2617 and 28 U.S.C. § 1331. This Court has jurisdiction over plaintiff's NYCHRL claims under 28 U.S.C. 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, Aziza McKnight Alveranga, is a person living with a disability. She resides in Brooklyn, New York. Plaintiff is a covered employee within the meaning of the FMLA and the NYC Human Rights Law.

6. Defendant, JetBlue, is an American airline company with headquarters in Long Island City, New York. Defendant is a covered employer within the meaning of the FMLA and the NYC Human Rights Law.

## FACTS

7. In or around August 2015, Ms. McKnight began working for JetBlue at LaGuardia Airport as a Ground Operations Crew Member.

8. Her job duties involved working in the baggage room and also in the air operations area lifting and moving baggage that often weighed more than 50 pounds.

9. Throughout her employment, it was common practice among the ground operations crew members to use vulgar and coarse language, including towards supervisors, co-workers, and subordinates, and JetBlue did not impose disciplinary sanctions for such language.

10. In or around October 2017, Ms. McKnight was diagnosed with uterine fibroids.

11. Uterine fibroids is a serious medical condition that affects the reproductive system, and Ms. McKnight has required ongoing medical treatment for that condition.

12. In or around October 2017, Ms. McKnight applied for FMLA leave in order to take time off from work to care for her medical condition.

13. Pursuant to JetBlue's policies, Ms. Knight submitted her application to Sedgwick Claims Management Systems ("Sedgwick"), the company that processes FMLA claims for JetBlue.

14. In or around October 2017, her application was granted, and she took three days off FMLA leave.

15. On information and belief, on or before Sedgwick notified Plaintiff, Sedgwick notified JetBlue that she had applied for and been granted the three-day FMLA leave.

16. In or around March 2018, Ms. McKnight began experiencing intermittent, incapacitating pain caused by her uterine fibroids. The intermittent, incapacitating pain was exacerbated by lifting heavy objects, which she was regularly required to do as part of her job duties as a Ground Operations Crew Member.

17. JetBlue uses a points-based attendance system in which poor attendance results in the accumulation of points that may lead to probation or termination. An employee does not accumulate points when she is on FMLA leave.

18. In or around July 2018, in order to avoid accumulating points, Ms. McKnight submitted an application to Sedgwick requesting intermittent FMLA leave for when she experienced uterine fibroid flareups that she could not predict in advance.

19. On or around August 4, 2018, Ms. McKnight suffered debilitating pain due to her uterine fibroid condition. Pursuant to JetBlue's policies, she called in sick to JetBlue to let them know that she was unable to work.

20. As of that date, August 4, 2018, Ms. McKnight had not yet heard from Sedgwick whether her request for FMLA leave had been granted. She called Sedgwick to inquire and the Sedgwick

representative told her that her application was still being processed. The representative also said that if the application was granted, it would retroactively cover her absence that day, August 4, 2018.

21. On or around Sunday, August 12, 2018, Ms. McKnight was scheduled to work from 12 PM to 6:30 PM, and was assigned to work in the baggage room. Shortly after she began work, she experienced a flareup of her uterine fibroid condition. Lifting the heavy bags increased her pain to such an extent that she felt extremely unwell and decided to tell her supervisor that she needed to leave work.

22. At or about the same time, the supervisor on duty, Andrew Pitter ("Mr. Pitter"), called Ms. McKnight and told her that her shift had been "frozen" and that she had to remain at work until 9:30 PM. Ms. McKnight told Mr. Pitter that she felt so unwell that she might pass out and requested to leave early. He refused her request.

23. During the next few hours, Ms. McKnight spoke several times to Mr. Pitter, as well as to her Duty Manager, Francisco Aquino ("Mr. Aquino"), and to two other supervisors, Maria Burgos Mateo and Inga Martin. In the course of those conversations, she repeated her request to leave early and her inability to remain past her normal shift time. Mr. Pitter repeated his refusal to allow her to leave work, and Mr. Aquino threatened that there would be "consequences" if she left early.

24. In the course of these conversations, Mr. Pitter was extremely hostile and abusive in his words and manner of speech. In response, at one point in the conversation Ms. McKnight told Mr. Pitter "You don't have to be an asshole about it."

25. Because she was fearful that she would lose her job if she left, Ms. McKnight remained at work and struggled through the afternoon and early evening until another employee came to relieve her at about 8:50 PM and she was able to leave work.

27. On the night of August 12, 2018, Ms. McKnight sent an email to Crew Relations, a Human Resources entity within JetBlue, describing the incident with Mr. Pitter.

28. Within two days of her email, Ms. McKnight was contacted by Crew Relations Representative Raushannah Kornegay. Ms. Kornegay requested that Ms. McKnight come into her office on August 15, 2018, Ms. McKnight's next scheduled workday, to discuss the August 12 incident.

29. Ms. McKnight went into work on August 15, 2018 and spoke with Ms. Kornegay and the General Manager Monica Cordeiro in the General Manager's office. After Ms. McKnight described the August 12, 2018 incident, Ms. Kornegay said that Mr. Pitter should not have acted as he did. Ms. McKnight left with the promise that Crew Relations would investigate the incident.  Ms. McKnight then returned to her shift.

30. On or around August 17, 2018, Ms. McKnight received a letter via JetBlue email from Sedgwick informing her that her application for FMLA intermittent leave had been approved and that the approval was effective as of August 4, 2018.

31. On information and belief, on or before August 17, 2018, Sedgwick notified JetBlue that Ms. McKnight's application for intermittent FMLA leave had been granted, effective as of August 4, 2018.

32. On or around August 24, 2018, just one week after JetBlue learned that Ms. McKnight had been granted intermittent FMLA leave, Mr. Acquino called Ms. McKnight into his office to

5

speak with him. Mr. Aquino told her that she was being suspended without pay. He said the suspension was because of the exchange between her and Mr. Pitter on August 12, 2018.

33.     Mr. Aquino also informed Ms. McKnight that there would be an investigation into the status of her employment. When Ms. McKnight asked for documentation of the suspension, Mr. Aquino told her he didn't have any, but to contact Crew Relations for documentation.

34.     After the meeting, JetBlue personnel required Ms. McKnight to turn over her badge, clear out her locker, and take all of her belongings with her as she was escorted from the premises.  In addition, they locked her out of her JetBlue email and cleared her entire work schedule online for the following three months, as if she had already been fired.

35.     On August 24, 2018, Ms. McKnight received in her personal email account an email purporting to attach the letter of suspension. However, the attachment was empty.  She subsequently received a letter of suspension by regular, postal mail.

36.     On or about August 31, 2018, Mr. Aquino called Ms. McKnight and told her that she was being fired.  He said the reason was that she had violated JetBlue's "respectful workplace policy."  When Ms. McKnight asked if there was anything that she could do to appeal this decision, he told her there was not.

37.     Ms. McKnight's last day of work for JetBlue was August 24, 2018.

38.     On information and belief, JetBlue's asserted reason for firing Ms. McKnight was not the real reason but was a pretext for discrimination.

38.     On information and belief, JetBlue suspended Ms. McKnight's employment and then fired her because she had applied for and been granted intermittent FMLA leave.

39.     On information and belief, JetBlue suspended Ms. McKnight's employment and then fired her because of her disability.

6

40. Ms. McKnight would have been able to perform the essential functions of her job while taking intermittent FMLA leave when her fibroid condition flared up.

41. JetBlue failed to engage in a cooperative dialogue with Ms. McKnight to determine what might be a reasonable accommodation of her disability and failed to provide her with a reasonable accommodation of her disability.

42. As a result of JetBlue's actions described above, Ms. McKnight has suffered economic loss and emotional distress.

## FIRST CAUSE OF ACTION
(FMLA - Suspension and Firing Because of Her Application for and the Grant of FMLA Leave)

43. Ms. McKnight repeats and re-alleges the above paragraphs of this Complaint as if fully set forth herein.

44. By suspending and then terminating Ms. Knight's employment because she had applied for and been granted intermittent FMLA leave, Defendant interfered with, restrained and denied Plaintiff's rights under the FMLA and retaliated against her for her exercise of her rights under the FMLA, in violation of 29 U.S.C. § 2615(a) and (b).

45. Defendant knew that its actions constituted an unlawful violation of the FMLA and/or showed reckless disregard for Plaintiff's statutorily protected rights.

46. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
(NYCHRL - Suspension and Firing Because of Disability)

47. Ms. McKnight repeats and re-alleges the above paragraphs of this Complaint as if fully set forth herein.

48. By suspending and then firing Ms. McKnight because of her disability, Defendant violated N.Y.C. Admin. Code § 8-107(1)(a).

49. Defendant knew that its actions constituted an unlawful violation of the NYCHRL and/or showed reckless disregard for Plaintiff's statutorily protected rights.

50. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
(NYCHRL- Failure to Reasonably Accommodate Disability)

51. Ms. McKnight repeats and re-alleges the above paragraphs of this Complaint as if fully set forth herein.

52. By the acts described above, Defendant violated N.Y.C. Admin. Code § 8-107(15)(a) by failing to reasonably accommodate Ms. McKnight's disability.

53. Defendant knew that its actions constituted an unlawful violation of the NYCHRL and/or showed reckless disregard for Plaintiff's statutorily protected rights.

54. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful practices unless and until this Court grants relief.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in her favor against Defendant as follows:

a) Declaring that the acts and practices complained of herein violated the FMLA and the NYCHRL;

b) Directing Defendant to take such affirmative action necessary to ensure that the effects of these unlawful employment practices are eliminated;

c) Reinstating Plaintiff to the position she held prior to Defendant's unlawful conduct;

d) Awarding damages to Plaintiff for all lost wages and benefits;

e) Awarding Plaintiff compensatory damages for emotional distress and pain and suffering;

f) Awarding Plaintiff punitive damages;

g) Awarding Plaintiff liquidated damages;

h) Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in bringing this action; and

i) Awarding Plaintiff any further relief as the Court may deem necessary and proper.

Dated:   July 30, 2020
         New York, New York

> Respectfully submitted,
>
> The Legal Aid Society,
> By: _____/s/_____
> Young W. Lee
> *Director, Employment Law Unit*
> Abigail Cook-Mack
> *Staff Attorney, Employment Law Unit*
> 199 Water Street, 3rd Floor
> New York, New York 10038
> (212) 298-3156

9

By: _____/s/_____

Laura Sager
Washington Square Legal Services, Inc.
245 Sullivan Street, Fifth Floor
New York, NY 10012
(212) 998-6442
laura.sager@gmail.com

Attorneys for Plaintiff